IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2014

# STATE OF TENNESSEE v. JOSHUA LEE STEELE

**Direct Appeal from the Criminal Court for Monroe County**
**No. 12-137      Amy A. Reedy, Judge**

---

**No. E2014-00321-CCA-R3-CD - Filed December 4, 2014**

---

The Defendant, Joshua Lee Steele, pleaded guilty to second degree murder, agreeing to allow the trial court to determine his sentence. The trial court sentenced him to serve twenty-five years in the Tennessee Department of Correction. On appeal, the Defendant contends that the trial court erred when it sentenced him because it did not properly consider the mitigating factor that the Defendant assisted authorities in detecting or apprehending other persons who had committed the offenses. After a thorough review of the record and the applicable authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Jeanne L. Wiggins, Madisonville, Tennessee, for the appellant, Joshua Lee Steele.

Herbert H. Slatery, III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Steven Bebb, District Attorney General; and A. Wayne Carter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant and three co-defendants, Lorenz Freeman, Coty Smith, and Jessica Payne, robbing, binding, and beating the victim, Mr. Vineyard. The victim died from his injuries. For these offenses, a Monroe County grand jury indicted the Defendant for one count of aggravated robbery, one count of conspiracy to commit aggravated robbery, and one count of first degree felony murder.

The Defendant pleaded guilty to second degree murder and agreed that the trial court would determine his sentence.[1]  At the guilty plea submission hearing, the State offered the following recitation of the facts in support of the trial court's acceptance of the guilty plea:

> [The State] would prove that on March the 4, 2012, that Mr. Freeman and Mr. Smith and Ms. Payne had an attempt to go and rob the victim in this case . . . .  That they went to [the victim's] place of residence, that [] Ms. Payne stayed in the vehicle and [Mr. Freeman and Mr. Smith] get out.  That they approached [the victim's] residence when another vehicle shows up and they get spooked and leave and so there's no event that happens at that point.  They go to a residence where they get hold of [the Defendant].  At that point, sometime later on, and Ms. Payne does not return with them, but Mr. Freeman, Mr. Smith and [the Defendant] go back to [the victim's] residence, and at that point they go in and it is Mr. Freeman and [the Defendant] who are the ones that hold on to the victim [] and he's hit in the head with a piece of iron, a piece of wrought iron, and he eventually dies . . . .
>
> . . . Mr. Smith was present, Mr. Smith was involved in the planning, Mr. Smith goes through the house, the house is ransacked looking for what we expect [was] cash, there were some rumors going around that the victim [] had large amount of cash that was there.  After this happens, they leave, go back, and there's some other conversations that goes on. . . . . [T]he defendants that went into [the victim's] residence all put on masks . . . . [T]he detectives and the agents advised me that at least, [the Defendant] and Mr. Freeman were very cooperative in their statements and forthcoming . . . .

At the sentencing hearing, the parties presented the following evidence: The State offered the presentence report, which the trial court admitted into evidence.  Doug Brannon, chief detective for the Monroe County Sheriff's Department, testified that he was the lead investigator for this homicide case.  He stated that in March of 2012, law enforcement responded to a call from the victim's neighbor.  The neighbor reported that he had found the victim dead in the victim's home.  Detective Brannon stated that law enforcement investigated the crime scene, a "log cabin type home[.]"  He stated that the victim's home had been "ransacked" and that the interior walls were "ripped apart, furniture overturned, mattresses shredded, sheetrock busted through." Detective Brannon testified that it was clear "someone had been searching for something."

---

[1]The three co-defendants also entered guilty pleas to various charges, none of which are the subject of this appeal.

2

Detective Brannon testified that investigators found the victim on the floor with his wrists bound by "flexible handcuffs." The victim had a visible injury to his head. Detective Brannon stated that he later learned the victim had died from a head wound and that the victim had been struck on the head and body with a hard object. Detective Brannon stated that investigators interviewed neighbors and witnesses who provided "direct information" that led to the Defendant and the co-defendants.

Detective Brannon stated that he located the Defendant first and that, initially, the Defendant denied any role in the crime. The Defendant later acknowledged his involvement. The Defendant "expressed remorse" about the victim's death. The Defendant explained to the investigators that he was not part of the original plan devised by Mr. Freeman, Mr. Smith, and Ms. Payne but that he "agreed to participate" in their plan. The Defendant stated that he, Mr. Freeman, and Mr. Smith went to the victim's residence and gained entry by kicking open the door. The Defendant stated that the three men held down the victim and assaulted him with a piece of "rebar" about two feet long. Detective Brannon explained that "rebar" is a piece of steel "normally used to reinforce concrete" and is very sturdy. The Defendant described the events "step by step," including the assault, tearing apart the walls, and stated that the three men were looking for narcotics and money because they believed the victim had a lot of cash. The Defendant identified the co-participants, which led to investigators locating them.

Detective Brannon stated that, "[i]n total from what we learned from speaking to all the parties, . . . it seemed that Mr. Smith [] had directed, initiated, was the man behind the idea. . . ."

On cross-examination, Detective Brannon stated that the Defendant was in possession of the "rebar" inside the victim's home and that the Defendant acknowledged using it to strike the victim. Detective Brannon recalled that the autopsy showed that contributing to the victim's death were his injuries as well as "positional asphyxiation," which Detective Brannon stated he interpreted as the victim "drown[ing] in his own blood." He stated that the autopsy showed that the victim did not die immediately and remained alive for "some time" after he was beaten.

Detective Brannon agreed that the Defendant cooperated with the authorities and acknowledged his participation in the crime. Detective Brannon recalled that the Defendant's remorse was sincere. He reiterated his statement that it was the Defendant who struck the victim in the head.

On redirect-examination, Detective Brannon recalled that the victim's hands were "cuffed" behind his back, and this restricted his movement and may have led to him not

3

being able to breathe.

Larry Vineyard testified that he was the victim's brother. He testified that the victim was a non-violent person who did not own a gun. He described arriving at the crime scene and walking inside the victim's house. He recalled that there was a "foot or foot and a half" deep puddle of blood where the victim's face had been. Mr. Vineyard testified that he and his two sons cleaned up the victim's house and boarded it up. He described the victim's generous and kind personality. Mr. Vineyard testified that he had spoken with the District Attorney and agreed that the Defendant and his co-defendants should be offered a deal to plead guilty to second degree murder.

On behalf of the Defendant, Candy Clark, the Defendant's sister, testified that the Defendant did not know his father until he was eight years old and that the Defendant's mother was killed in a car wreck when he was eleven years old. Ms. Clark said the Defendant had a wonderful relationship with his mother and that her death was very hard on him. Ms. Clark testified that the Defendant was in the car wreck with his mother. Ms. Clark and her sister "raised" the Defendant after his mother's death. She described the Defendant as angry and stated that he would get mad easily.

Ms. Clark testified that, as an adult, the Defendant had a "big heart" but made a lot of bad decisions. She described him as a "follower," and she said he could be dared by someone to do anything. She stated that she had never known him to be violent toward anyone, but she reiterated that he had a temper. She stated that the Defendant was "very remorseful" for the victim's death.

On cross-examination, Ms. Clark agreed that the Defendant had a prior criminal history and that he had been convicted of multiple drug offenses and other crimes. She agreed that he was on probation when this crime was committed.

Amber Ratledge testified that she was the Defendant's older sister and that life had "been really hard" on the Defendant, Ms. Clark, and herself because they had lost their mother. She stated that the Defendant had a drug problem but had never been a violent person.

After considering this evidence, the trial court stated that it had considered the sentencing guidelines enumerated in Tennessee Code Annotated section 40-35-102. The trial court stated that the Defendant was a Range I offender and had a prior criminal record spanning from 2007 to 2011. The trial court acknowledged that the Defendant had a "very sad background" and had suffered during his life. The trial court went on to say:

4

This is a case where considering enhancement factors we have two leaders. . . . . There are four people and two leaders and I find that [the Defendant] was a leader. He did strike the victim. Maybe he didn't go there to kill, but you don't hit a man in the head with a piece of rebar without advancing that quality of leadership in a criminal enterprise. When you take that step you have taken a leadership role and he did that. So I do find in this case that [the Defendant] was a leader in the commission of an offense involving two or more criminal actors. . . . . I also find that the [D]efendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense, and in his case I also find that tying him up with those one time handcuffs, striking him and allowing him to lay there in a helpless position, and the proof is that he didn't die immediately but that he bled what sounds like rather profusely based on the [] horrific cleanup efforts of the victim's brother and his two sons . . . . So I find all that proof taken together is proof of that enhancement factor, that the [D]efendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense. I do not find that the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great. That doesn't mean it wasn't great, that just means the Court is finding it's part of second degree murder. . . . . So in this case I also do not find that any mitigation has been proven. There's just not enough proof here that fits in with those mitigating factors. Sympathetic issues, sad stories, but not proof of mitigation in this crime. . . . . Having found those enhancement factors, having consider[ed] what the law requires that I consider, and that is that [the Defendant] shall be punished in relation to the seriousness of the offense, . . . to prevent crime based on the testimony we have had in the record today, and promote respect for the law which provides an effective general deterrent, and in that case I sentence [the Defendant] to 25 years in the Tennessee Department of Corrections.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it sentenced him because it failed to consider the mitigating factor that the Defendant "assisted the authorities" in investigating this crime. *See* T.C.A. § 40-35-113(9) (2014). The Defendant argues that the trial court erred when it found that no evidence was presented to establish this mitigating factor. The State counters that the record supports the trial court's sentencing

5

determinations. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*. at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707. The defendant bears "[t]he burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2014). The trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the

6

defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

Section 40-35-113 contains a non-exclusive list of mitigating factors that a trial court may apply to a defendant's sentence "if appropriate for the offense." T.C.A. § 40-35-113 (2014). We, however, recognize that a trial court's weighing of applicable mitigating factors is "left to the trial court's sound discretion." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). "[T]he trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. The burden of proving applicable mitigating factors rests upon the defendant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App., at Knoxville, Sept. 18, 1995), *perm. app. denied* (Tenn. Feb. 5, 1996). Moreover, the trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

The Defendant contends that the trial court erred by failing to consider the evidence presented in support of mitigating factor (9), that the Defendant "assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses[.]" T.C.A. § 40-35-113(9) (2014). The trial court did consider whether there was any proof at the sentencing hearing of mitigating factors and stated that it found that there was none. Our review of the record indicates that Detective Brannon testified that the Defendant did give information to the authorities that aided them in identifying other persons who had been involved in the crime.

We agree that this is proof of mitigating factor (9), that the Defendant "assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses[.]" *Id.* However, as previously stated, enhancing and mitigating factors are advisory only. *See* T.C.A. § 40-35-114 (2014); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *Carter*, 254 S.W.3d at 343. This Court is "bound by [the] trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346. The trial court stated that it considered the Defendant's role in the crime, and the circumstances of the victim's death, particularly that the Defendant left the victim to die after beating him in the head with an iron pole. Accordingly, the trial court applied two enhancement factors, that the Defendant was a leader in the commission of an offense involving two or more criminal actors and that the

Defendant treated the victim with exceptional cruelty during the commission of the offense. T.C.A. § 40-35-114(2), (5) (2014). For these reasons, the trial court sentenced the Defendant to a within range sentence of twenty-five years for second degree murder.

We conclude that the Defendant's within range sentence is consistent with the purposes set out in the Sentencing Act and that it was within the trial court's broad discretion not to apply mitigating factor (9) when sentencing him. *See State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013) (citing *Bise*, 380 S.W.3d at 709-10). The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE